1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6

MARVIAN C. MARTIN, SR.,

7                                    Plaintiff,

8            v.

9  MICHAEL J. ASTRUE. Commissioner of
   Social Security,
10

11                                   Defendant.

Case No. 3:12-cv-05240-KLS

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

12
13
14
15

16        Plaintiff has brought this matter for judicial review of defendant's denial of his

17  application for supplemental security income ("SSI") benefits.  Pursuant to 28 U.S.C. § 636(c),

18  Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have

19  this matter heard by the undersigned Magistrate Judge.  After reviewing the parties' briefs and

20  the remaining record, the Court hereby finds that for the reasons set forth below, defendant's

21  decision to deny benefits should be reversed and that this matter should be remanded for further

22  administrative proceedings.

23

24                      FACTUAL AND PROCEDURAL HISTORY

25        On July 25, 2009, plaintiff filed an application for SSI benefits, alleging disability as of

26  January 1, 2006, due to head injuries, a broken jaw, seizures, back pain, high blood pressure,

ORDER - 1

migraines, problems with his left knee and elbow, a bipolar disorder, depression, and memory difficulties. See Administrative Record ("AR") 20, 148, 158.  That application was denied upon initial administrative review on October 7, 2009, and on reconsideration on February 24, 2010. See AR 20, 73, 85.  A hearing was held before an administrative law judge ("ALJ") on March 8, 2011, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 36-70.

In a decision date April 1, 2011, the ALJ found plaintiff to be not disabled. See AR 20-31.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on February 22, 2012, making the ALJ's decision defendant's final decision. See AR 1; see also 20 C.F.R. § 416.1481.  On March 21, 2012, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #3.  The administrative record was filed with the Court on June 15, 2012. See ECF #9.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision should be reversed and remanded for further administrative proceedings, because the ALJ erred in evaluating the medical opinion source evidence in the record; (2) in assessing plaintiff's residual functional capacity; and (3) in finding her to be capable of performing other jobs existing in significant numbers in the national economy.  For the reasons set forth below, the Court agrees the ALJ erred in determining plaintiff to be not disabled, and therefore finds that defendant's decision should be reversed, and that this matter should be remanded for further administrative proceedings.

DISCUSSION

The determination of the Commissioner of Social Security (the "Commissioner") that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been

applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986); <u>see</u> <u>also</u> <u>Batson v. Commissioner of Social Security Admin.</u>, 359 F.3d 1190, 1193 (9th Cir. 2004); <u>Carr v. Sullivan</u>, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing <u>Brawner v. Secretary of Health and Human Services</u>, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (citation omitted); <u>see</u> <u>also</u> <u>Batson</u>, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record.").  "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).  "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting <u>Rhinehart v. Finch</u>, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached.  If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them.  It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence.  While the court may not try the case de novo, neither may it abdicate its traditional function of review.  It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational.  If they are . . . they must be upheld.

<u>Sorenson</u>, 514 F.2d at 1119 n.10.

ORDER - 3

I.      The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984)

ORDER - 4

(citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A.     Dr. Peterson

The record contains a psychological evaluation report from J. Keith Peterson, Ph.D., in regard to which the ALJ found as follows:

J. Keith Peterson, Ph.D., evaluated the claimant in January 2010 (Ex. 17F). The claimant reported he was living with his girlfriend, infant daughter, and step-father. He stated that he had been raped as a child and left home at age 13. He claimed he had seizures, the last one in December. Heat gave him seizures. He reported not being able to even lift his laundry due to pain. The claimant relayed that he had used drugs in the past but had stopped a long time ago. He said he had frequent hallucinations. Dr. Peterson noted that the claimant was evasive about his income and possibly his drug use. On examination, the claimant has good short term memory, although his long term was not fully intact. Dr. Peterson found no undue problems with inattentive behavior and stated that the claimant was able to follow a three-step command. The claimant was capable of spelling "world" back and forth; and counted slowly by threes. The claimant reported that he adjusted his psychiatric medication based on his moods. Dr. Peterson diagnosed polysubstance dependence (usage unclear), rule out mood disorder,

[post traumatic stress disorder ("PTSD")], and antisocial personality disorder.  He opined that the claimant required simple work and that the claimant was capable of working from a cognitive standpoint (Ex. 17F/7).  Dr. Peterson stated that the claimant would have long-term difficulties with work-related interpersonal issues (Ex. 17F/7).  Dr. Peterson noted the claimant's superficial social skills were hampered by his sullen and hostile effect.  However, he was cooperative and respectful (Ex. 17F/3).  Dr. Peterson stated that the claimant's depression and PTSD should not prevent him from working and that the claimant's biggest obstacle was his anger, hostility, aggressiveness, and general interpersonal difficulties.

. . .

. . . I give significant weight to Dr. Petterson's evaluation . . . I agree that his social limitations are his greatest limitation.  However, the evidence does not reflect that he is not capable of interacting with people at all.  At most, Dr. Peterson described the claimant as sullen.  The claimant was still cooperative during Dr. Peterson's evaluation.  Therefore, the residual functional capacity [assessment][2] accounts for his social limitations. . . .

AR 26-27, 29.

Plaintiff agues Dr. Peterson's findings and conclusions are not consistent with the ALJ's assessment of his mental residual functional capacity.  The Court disagrees.  It is true, as the ALJ himself noted earlier in his decision, that Dr. Peterson noted hostility on the part of plaintiff during the evaluation in addition to sullenness. See AR 27, 395-96.  To the extent the ALJ erred in his characterization of Dr. Peterson's findings here, however, that error was harmless, as it did not affect the ALJ's ultimate disability determination. See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); see also Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's

---

[2] That residual functional capacity assessment reads in relevant part:

> **. . . The claimant is capable of performing simple work tasks.  He should avoid working with the public, and have only occasional, brief and superficial contact with co-workers and supervisors.  The claimant is limited to a predictable workplace routine.**

AR 24-25 (emphasis in original).

ORDER - 6

ultimate decision.").

First, as pointed out by the ALJ, Dr. Peterson also noted plaintiff was still cooperative, as well as respectful, during the evaluation. See AR 27, 29, 395.  It was not unreasonable, therefore, for the ALJ to take this as evidence that plaintiff was not incapable of interacting with people *at all*.  In addition, Dr. Peterson's own conclusions support the ALJ's statement that plaintiff was still able to interact socially.  Dr. Peterson did opine as follows:

> . . . The biggest obstacle to [plaintiff] working appears to be [his] anger, hostility, aggressiveness, and general interpersonal difficulties.  He is at great risk for having long-term difficulties with work-related interpersonal issues, and I am not sure that this prognosis would improve with treatment.

AR 399.  However, being at "great risk" for long-term difficulties with interpersonal issues is far from being unable *at all* to interact with others.  Nor is there anything in the above conclusions to suggest the ALJ's limitation to occasional, brief and superficial contact with co-workers and supervisors is at odds or inconsistent with such stated difficulties.  To the extent any conflict or ambiguity exists here, furthermore, it is solely the ALJ's responsibility to resolve and/or clarify it. See Reddick, 157 F.3d at 722; Sample, 694 F.2d at 642; Morgan, 169 F.3d at 601.  As such, the Court declines to find the ALJ improperly substituted his own interpretation of the findings Dr. Peterson as plaintiff argues.[3]

B.   Dr. Sanchez

Plaintiff also challenges the ALJ's treatment of the findings and conclusions of Debra A. Sanchez, Ph.D.:

In January 2011, Dr. Debra Sanchez, Ph.D., completed a [sic] evaluation for

---

[3] See Gonzalez Perez v. Secretary of Health and Human Services, 812 F.2d 747, 749 (1st Cir. 1987) (ALJ may not substitute own opinion for findings and opinion of physician); McBrayer v. Secretary of Health and Human Services, 712 F.2d 795, 799 (2nd Cir. 1983) (ALJ cannot arbitrarily substitute own judgment for competent medical opinion); Gober v. Mathews, 574 F.2d 772, 777 (3rd Cir. 1978) (ALJ not free to set own expertise against that of physician who testified before him).

state welfare benefits.  Dr. Sanchez diagnosed the claimant with PTSD, major depression and a Global Assessment of Functioning (GAF) score of 52, consistent with moderate symptoms or difficulties in social, occupational or school functioning (Ex. 27F/3).  Dr. Sanchez opined that the claimant had no limitations in the ability to perform routine tasks without supervision, but had severe limitations in the ability to communicate effectively in a work setting with public contact and marked limitations in his ability to perform complex tasks and in work involving even limited public contact (Ex. 27F/4).  Dr. Sanchez noted that the claimant reported that he is irritable and easily angered (Ex. 27F/3).

. . .

. . . [T]he residual functional capacity is generally consistent with Dr. Sanchez's findings.  I do not find anything in Dr. Sanchez's assessment of moderate, marked, and severe limitations that contract [sic] the finding.

AR 28-29.  Plaintiff argues the ALJ erred in so finding, in light of Dr. Sanchez's opinion that he would have a "very significant difficulty communicating and performing effectively in any work setting" involving limited public contact. AR 497.  As noted above, however, the ALJ restricted plaintiff from working with the public. See AR 24.  Nor is there any indication from Dr. Sanchez's evaluation report that, as with Dr. Peterson, he believed plaintiff was incapable of any contact with others in the workplace, and therefore the Court finds the ALJ's limitation to only occasional, brief and superficial contact with co-workers and supervisors, adequately takes into account any restrictions in this area found by Dr. Sanchez. See AR 24-25.

The Court agrees with plaintiff, though, that Dr. Sanchez's statement that he was capable of "following simple instructions for brief periods of time" only, is inconsistent with the ALJ's finding that plaintiff was capable of performing simple tasks without limitation. See AR 24, 497.  Indeed, Dr. Sanchez further opined that plaintiff "would have difficulty remembering and persisting in simple tasks due to poor focus."[4] AR 497.  Accordingly, in this regard, the ALJ

---

[4] The ALJ also stated plaintiff would have "very significant difficulty" doing so in regard to simple tasks due to poor focus, but it seems the ALJ actually had in mind complex tasks, as this statement was in response to the question of

ORDER - 8

erred in finding as he did in regard to the medical evidence form Dr. Sanchez.

C.      Dr. Breen

Plaintiff argues the ALJ's following evaluation of the medical opinion source evidence in

the record was erroneous as well:

> . . . [I]n April 2009, Kristi Breen, Ph.D., completed a [state agency] psychological evaluation.  Dr. Breen diagnosed a mood disorder, cocaine dependence in early remission, and possible PTSD.  The claimant reported that he had completed inpatient treatment the previous August (Ex. 11F).  She opined that the claimant had marked limitations in the ability to understand, remember and follow complex instructions; perform routine tasks; and relate to the public, co-workers and supervisors (Ex. 11F/3).

> . . .

> . . . I give little weight to Dr. Breen's opinion . . .  Dr. Breen's opinion was premised primarily on the claimant's self-report, which I find is not reliable. . . .

AR 26, 29.  The Court disagrees that the ALJ erred here.  A medical source's opinion premised

largely on a claimant's subjective complaints may be discounted where the record supports the

ALJ in discounting the claimant's credibility.[5]  See Tonapetyan, 242 F.3d at 1149; Morgan, 169

---

whether plaintiff could "[u]nderstand, remember and persist in tasks by following **complex** instructions." AR 497 (emphasis in original).

[5] The ALJ provided several reasons for finding plaintiff not entirely credible concerning his subjective complaints, which read in relevant part:

> There is reason to doubt the claimant's credibility regarding the intensity, persistence and limiting effects of his conditions.  First, the medical record reflects sparse treatment for the claimant's physical complaints and no reports of seizures.  Regarding alleged lumbar spine pain, the claimant's x-rays were normal (Exs. 10F/7, 26F/4).  The claimant failed to go to physical therapy for his alleged physical impairments.  Further, he gave several reasons for why he did not go.  At one time, he reported he did not know if he would be up and around by 3:00pm (Ex. 12F/2).  However, at the hearing, he testified that he missed appointments due to getting his mom and dad situated.  Thus, not only did he receive minimal treatment and fail to comply with treatment, he gave inconsistent statements about his reasons for his lack of compliance.  All of this detracts from his credibility.

> There is other evidence of exaggeration or inconsistent statements in the record.  Dr. Powell noted in March 2010 that the claimant reported having tuberculosis (TB), but he actually only had a positive screen, but never any positive sputum (Ex. 24F/20).  Dr. Powell noted a report that the claimant spreads this information about TB as a way to keep his health benefits (Ex. 24F/7).

ORDER - 9

F.3d at 601.  The comments Dr. Breen provided along with the moderate to marked functional

limitations she assessed, do for the most part indicate she was relying primarily on plaintiff's

own self-reporting.  See AR 339.  In addition, while Dr. Breen did conduct psychological testing

---

The claimant reported at the hearing that he had been living with his mother since 2008.  Yet
when he saw Dr. Peterson in January 2010, he reported he was living with his girlfriend,
infant daughter and stepfather (Ex. 17F1/1-2).  It is unclear why he would report inconsistent
living arrangements.  However, I specifically asked if and how long he had been living with
his mother and he was clear that he had been living with his mother since 2008.  The fact that
he would provide inconsistent information about such a seemingly benign detail further
detracts from his testimony, especially in light of the other evidence of inconsistencies and
exaggeration.  The claimant's inconsistent statements at several points in the record cast doubt
on his credibility regarding the intensity, persistence and limiting effects of his condition.

AR 28-29.  These are valid reasons for discounting plaintiff's credibility.  See Burch v. Barnhart, 400 F.3d 676, 681
(9th Cir. 2005) (upholding ALJ's discounting of claimant's credibility in part due to lack of consistent treatment,
noting that fact that claimant's pain was not sufficiently severe to motivate her to seek treatment, even if she had
sought some treatment, was powerful evidence regarding extent to which she was in pain); Meanal v. Apfel, 172
F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered claimant's failure to request serious medical treatment for
supposedly excruciating pain); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (failure to assert good reason for
not seeking or following prescribed course of treatment, or finding that proffered reason is not believable, "can cast
doubt on the sincerity of the claimant's pain testimony").

Plaintiff argues that the ALJ's above credibility determination "was not particularly comprehensive," that
his alleged physical limitations have "no bearing on the errors assigned to his mental impairments," that the ALJ
"offered no explanation how [his other] inconsistent statements are evidence of a global tendency to misrepresent
his condition," and that his statements regarding his living arrangements have "no bearing on the credibility of his
reports at the psychological evaluations at issue here." ECF #14, pp. 1-2.  These arguments, however, were made in
plaintiff's reply brief.  See id.  Although plaintiff states he "chose not to address the ALJ's credibility finding in his
Opening Brief as the argument would distract [sic] from the substantive errors the ALJ made in evaluating the
medical evidence" (ECF #14, p. 1), that omission nevertheless precludes his ability to raise it for consideration
before this Court.  See Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by
failing to make argument in opening brief, objection to district court's grant of summary judgment was waived);
Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters not specifically and distinctly argued in opening brief
ordinarily will not be considered).

In addition, there is no requirement that the ALJ refute each and every allegation a claimant makes in
regard to his or her alleged impairments, but rather is only "required to make 'a credibility determination with
findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's
testimony.'" Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Thomas v. Barnhart, 278 F.3d
947, 958 (9th Cir.2002)); see also Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991) ("[A] reviewing court
should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of
disabling pain.").  The ALJ, furthermore, may consider "ordinary techniques of credibility evaluation" in
determining a claimant's credibility, such as reputation for lying, prior inconsistent statements concerning
symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir.
1996).  Accordingly, the ALJ was not required to specifically link plaintiff's inconsistent statements and lack of
consistent treatment to his alleged mental impairments in order to discount his credibility overall.

ORDER - 10

that indicated severe depression and anxiety and a mental status examination,[6] neither suggested the level of actual limitation assessed here. See AR 340-42.

Plaintiff further argues the ALJ "ignored the consistency of Dr. Breen's opinion" with those of Drs. Peterson and Sanchez. First, as discussed above in regard to the latter two medical sources, the limitations the ALJ placed on plaintiff's social functioning are not inconsistent with the moderate to marked limitations Dr. Breen has assessed. See AR 24-25, 339. Second, the ALJ also limited plaintiff to simple work, which again is in line Dr. Breen's findings. See AR 24, 339. Third, Dr. Peterson opined that "[f]rom a cognitive standpoint," plaintiff was able to perform simple work as he "followed directions well" and had "adequate general alertness"[7] (AR 399), which is at odds with Dr. Breen's opinion that plaintiff was markedly limited in performing routine tasks, exercising judgment and making decisions (AR 339). Dr. Sanchez, furthermore, found at most moderate limitations in these areas. See AR 497. In any event, as discussed above, the fact that Dr. Breen relied primarily on plaintiff's own self-reporting to support the functional limitations she found, is by itself a sufficient basis for rejecting her opinion.

D.    Dr. Harrison

Lastly, plaintiff argues the ALJ erred in finding as follows:

A State agency psychological reviewer, Dr. Kristine Harrison, Psy.D., reviewed the claimant's medical records, including Dr. Peterson's evaluation, and opined that the claimant is capable of performing simple work tasks. She also opined that the claimant should avoid working with the public, and have only occasional, brief and superficial contact with co-workers and supervisors. Furthermore, Dr. Harrison opined that that claimant should be limited to a predictable workplace routine. Dr. Harrison based her opinion upon a finding

---

[6] See Clester v. Apfel, 70 F.Supp.2d 985, 990 (S.D. Iowa 1999) ("The results of a mental status examination provide the basis for a diagnostic impression of a psychiatric disorder, just as the results of a physical examination provide the basis for the diagnosis of a physical illness or injury.").

[7] Dr. Peterson did opine that plaintiff would "have problems learning new material" (AR 399), but it is not at all clear that he believed plaintiff would be markedly limited in this area as found by Dr. Breen, and in any event, Dr. Peterson listed this as a reason why he restricted plaintiff to performing simple work.

ORDER - 11

1
2
3
4
5
6
7

of antisocial personality, major depression, PTSD and substance abuse in remission.

. . .

. . . I . . . give great weight to the opinion of Dr. Harrison.  Dr. Harrison supports her limitations with specific references to medical evidence.  The opinion is internally consistent as well as consistent with the evidence as a whole.  As there is no objective evidence contradicting this finding, the opinion is entitled to substantial weight.  I therefore accept and adopt the limitations found in Dr. Harrison's opinion.

8
9
10
11
12

AR 27, 29.  Specifically, plaintiff argues that because Dr. Harrison reviewed the same medical documentation that Dr. Peterson did, and because Dr. Peterson and Dr. Sanchez conducted their own psychological evaluations of him, it cannot be said that Dr. Harrison's opinion "is consistent with other independent evidence in the record," and therefore entitled to be treated as substantial evidence.  Lester, 81 F.3d at 830-31; see also Tonapetyan, 242 F.3d at 1149.

13
14
15
16
17
18
19
20
21
22
23
24
25

It does appear that Dr. Harrison relied solely, or at least largely, on the evaluation report provided by Dr. Peterson.  See AR 402.  But Dr. Harrison's functional assessment is largely in line with that of Dr. Peterson, with respect to which as discussed above, the ALJ did not err in evaluating.  See AR 29, 399, 402.  On the other hand, also as discussed above, the opinion of Dr. Sanchez regarding plaintiff's ability to perform simple work-related tasks did not receive proper treatment from the ALJ, and clearly is inconsistent with the functional assessment made by Dr. Harrison in this area.  See AR 402, 497.  It cannot be said, therefore, that nothing in the medical evidence in the record contradicts Dr. Harrison's assessment here as found by the ALJ.  Nor did the ALJ resolve the conflict regarding the ability to perform simple work seen in the opinions of Drs Peterson and Sanchez.  Accordingly, the ALJ's reliance on Dr. Harrison's opinion cannot be upheld at this time.

26

ORDER - 12

II.       The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.  If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.  It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.  However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

As noted above, the ALJ assessed plaintiff with the following mental residual functional capacity:

> **. . . The claimant is capable of performing simple work tasks.  He should avoid working with the public, and have only occasional, brief and superficial contact with co-workers and supervisors.  The claimant is limited to a predictable workplace routine.**

ORDER - 13

AR 24-25 (emphasis in original).  Although as discussed above, the ALJ did not err in evaluating the medical opinion source evidence in the record concerning social interaction in the workplace as plaintiff alleges, also as discussed above, the ALJ failed to properly address the limitations on performing simple work-related tasks found by Dr. Sanchez.  Accordingly, the Court agrees with plaintiff that the ALJ's RFC assessment cannot be upheld.

III.      The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do.  See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids").  Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ.  See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence.  See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record."  Id. (citations omitted).  The ALJ, however, may omit from that description those limitations he or she finds do not exist.  See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity.  See AR 65-66.  In response to that question, the vocational expert testified

ORDER - 14

that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. <u>See</u> AR 66-67.  Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. <u>See</u> AR 30-31.

Plaintiff argues the vocational expert did not consider the full impact of his interpersonal difficulties at the hearing, in light of the ALJ's improper evaluation of the medical evidence in the record and thus his erroneous residual functional capacity assessment.  Again although, as discussed above, the ALJ did not err in evaluating the medical opinion source evidence in the record concerning such difficulties, also as discussed above, the ALJ failed to properly address the limitations on performing simple work-related tasks found by Dr. Sanchez.  Accordingly, the Court finds the ALJ's step five determination cannot be upheld on this basis.

IV.     <u>This Matter Should Be Remanded for Further Administrative Proceedings</u>

The Court may remand this case "either for additional evidence and findings or to award benefits." <u>Smolen</u>, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." <u>Id.</u>

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." <u>Smolen</u>, 80 F.3d at 1292; <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

ORDER - 15

(1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

Because issues still remain with respect to plaintiff's social functional limitations, his residual functional capacity and his ability to perform other jobs existing in significant numbers in the national economy, remand for further administrative consideration of these issues by defendant is appropriate.

CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded plaintiff was not disabled. Accordingly, defendant's decision is REVERSED and this matter is REMANDED for further administrative proceedings in accordance with the findings contained herein.

DATED this 10th day of December, 2012.

Karen L. Strombom
United States Magistrate Judge

ORDER - 16